**Marianne Dugan**, OSB # 932563
mdugan@cldc.org

**Sarah Alvarez**, OSB # 182999
salvarez@cldc.org

CIVIL LIBERTIES DEFENSE CENTER
1711 Willamette St. Suite 301 #359
Eugene, OR 97401
541-687-9180

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON
EUGENE DIVISION

| | |
|---|---|
| SAMUEL YERGLER and NICHOLAS HOLLOWS,<br><br>        Plaintiffs,<br><br>      v.<br><br>CITY OF EUGENE; ERIC EASON, *in his official capacity*; ERIC HUBBARD, *in his official capacity*; and CRAIG CARNAGEY, *in his official capacity*,<br><br>        Defendants. | Case No. 6:23-cv-1545<br><br>COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF<br><br>First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983 – *Monell*; and violation of the Oregon Constitution<br><br>Declaratory and Injunctive Relief (Facial Challenge)<br><br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

1.  This complaint seeks declaratory and injunctive relief, pursuant to 28 U.S.C. 2201(a), in a facial challenge to various "Park Rules" that are in effect on more than 5000 acres of property owned or managed by the City of Eugene. The facial challenges are brought pursuant to 42 U.S.C. 1983, for violations of the First and Fourteenth Amendments to the U.S. Constitution; and pursuant to the Oregon Constitution, for violation of the nondelegation doctrine and as *ultra vires* acts.

## JURISDICTION AND VENUE

2.  Jurisdiction exists pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343

(civil rights), because plaintiffs' claims arise under 42 U.S.C. § 1983. Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b), because the City of Eugene is in this district and the events giving rise to plaintiffs' claims occurred therein. The Court has the power to grant the declaratory relief sought by plaintiffs under 28 U.S.C. § 2201(a), and has equitable power to issue an injunction.

## FACTUAL BACKGROUND

3.      The City of Eugene owns and controls over 5000 acres of open space.[1] The City delegated to the City Manager the enactment and enforcement of administrative Park Rules covering those areas.[2] On information and belief, the Park Rules were adopted pursuant to Section 2.019(1)(h) of the Eugene Code, 1971, which authorizes the City Manager or designee to adopt rules for implementation of any provision of the City Code.[3]

4.      On information and belief, through numerous administrative orders, the City Manager then further delegated, designating employees within the Public Works Department to promulgate and enforce the Park Rules.

5.      The Park Rules apply to all property belonging to the City of Eugene, including all parks and facilities thereon; City Hall; the library; the Hult Center; City facilities outside the corporate limits of the City; and county parks within the corporate limits of the City. The Park Rules provide for enforcement of the rules by police, any authorized City personnel, and/or "any

---

[1] https://www.eugene-or.gov/DocumentCenter/View/68225/COE-Parks-and-Open-Space-Annual-Report-FY2022, page 32 (last visited October 2, 2023).

[2] Available at https://www.eugene-or.gov/DocumentCenter/View/54906/2023-Park-Rules-Booklet?bidId= (last visited October 2, 2023).

[3] Available at https://eugene.municipal.codes/EC (last visited October 2, 2023). The reference to "1971" in the Park Rules' citation to the Eugene Code is unclear, as the web version of Code 2.019 states an initial adoption date of 1991.

other person in lawful charge of the premises" (apparently whether or not that person is a government official or employee). Park Rule 1.005.

6.      The Park Rules provide for jail time and fines for any violation of any of the rules. Specifically, Park Rule 1.076 provides that "[v]iolation of these Park and Open Space Rules adopted under Section 2.019 of the Eugene Code, 1971, is punishable by a fine not to exceed $500 or confinement in jail not to exceed 30 days, or both such fine and imprisonment." *See also* Subsection 2.1990(2), Eugene Code (same). As discussed *infra*, the Park Rules purport to criminalize a multitude of activities and conduct that would otherwise be lawful, or at the most, a civil infraction warranting a small fine.

7.      Park Rule 1.005(3)(a) also allows the City to exclude people from all 5000-plus acres of parks and other City facilities and activities, for a violation of any Park Rule, or after simply being asked to leave:

> The City may, in its discretion, notify any person who engages in conduct in a park, open space, recreational facility or at a City sponsored activity that results in the person being asked to leave the park area, open space area, recreational facility, or activity, being issued a Notice of Rule Violation pursuant to subsection (1)(a)3. of this section, being arrested or cited by a police officer for any violation of park and open space rules, the Eugene Code, 1971, or state or federal law, that they are prohibited from future use of City parks, open space, or facilities, or from participation in City sponsored programs or activities, and their entry therein or thereon will constitute trespassing and that further legal action will be taken accordingly.

8.      The Park Rules contain no guidelines, parameters, or limits on the duration or location(s) of such an exclusion, allowing unfettered discretion to anyone authorized to administer these rules.

9.      Park Rule 1.010(16) prohibits the following:

> Engaging in any activity or conduct which is disruptive or incompatible with the appropriate use of the premises or which interferes with the reasonable use and enjoyment of the park, open space area, or park facility by others, including, but not limited to, using playground equipment, picnic tables or picnic shelters for reasons other

than their intended use.

10.     There are no definitions within the rules of "disruptive," "incompatible," "appropriate use," "reasonable use and enjoyment," or any other term in Park Rule 1.010(16). As explained *supra*, violation of this Rule is punishable by jail time, a $500 fine, and/or exclusion from all 5000-plus acres of parks, open spaces and public facilities, and City-sponsored programs and activities, at the entire discretion of the person enforcing the Rule.

11.     Rule 1.010(17) prohibits "[e]ngaging in any activity or conduct which is disruptive or interferes with the enjoyment by others of City sponsored park, open space, or recreational programs or activities." Again, there are no definitions within the rules of "disruptive," "interferes," "enjoyment," or any other term in Park Rule 1.010(17). Violation of this Rule is similarly punishable by jail time, fine, and/or exclusion.

12.     A person may appeal their exclusion order only via a hearing request, submitted in writing to the Parks & Open Space Division Director, within 48 hours of receipt of the exclusion order. Park Rule 1.074. The Director's decision on such an appeal can be further appealed to Eugene Municipal Court. The Court may affirm, modify, or reverse a Division Director's decision, but the Park Rules do not provide any guidance on what the Director or Municipal Court may or should consider when affirming, modifying, or reversing a Park exclusion. And, although recent changes to the Park Rules stay the exclusion pending appeal,[4] the exclusion orders plaintiffs are aware of state to the contrary, which, upon information and belief, causes many excluded people to stay out of the 5000-plus acres of public spaces pending

---

[4]  Administrative Order No. 58-23-25, available at https://coeapps.eugene-or.gov/cmoweblink/0/edoc/3602983/Admin%20Order%2058-23-25%20--%20Extending%20Emergency%20Park%20Order%20Re.%20Notices%20of%20Restriction%20(Exp.%2012-6-23).pdf (last visited October 2, 2023).

appeal.

13.     Each of the above-described Park Rules is unconstitutionally vague; circumscribes far more expression in public spaces than necessary; chills expression in public fora; allows unconstitutionally overbroad discretion regarding enforcement by police and other enforcers; is an unconstitutional time, place, and manner restriction, and lacks procedural safeguards for issuance and review of orders to leave, punishment decisions, and exclusion orders. Enforced together, these Park Rules have been, and continue to be, serious threats to free expression in all of Eugene public spaces.

14.     Park Rules 1.010(16), 1.010(17), 1.005(3), and 1.074 are unconstitutional on their face, and plaintiffs have standing to present a facial challenge to those rules, as discussed *infra*.

15.     Plaintiffs also allege the City exceeded its lawful authority when it granted unfettered power to the City Manager, without appropriate safeguards or guidance, and the City Manager in turn improperly delegated unfettered enforcement power to City police officers, City employees, and private actors. The Park Rules are currently operating and enforced *ultra vires* and in violation of the nondelegation doctrine.

**PARTIES**

16.     Plaintiff Nicholas Hollows was at all relevant times a resident of Eugene, in Lane County, Oregon. Mr. Hollows no longer resides in the City of Eugene, but he still frequently visits, and intends to continue visiting and speaking in public about homelessness and other matters of public concern; and as such is at risk of future enforcement action due to his expressive conduct. Mr. Hollows has been an advocate for the unhoused in the City of Eugene and when living here he frequently volunteered his time to help various aid organizations in the City of Eugene. He has attended protests in public spaces in the City of Eugene and elsewhere.

He has observed many "sweeps" removing unhoused campers from public parks. As further discussed *infra*, the City of Eugene has subjected Mr. Hollows to ticketing, exclusion, arrest, and prosecution due, at least in part, to his expressive conduct.

17.     Plaintiff Samuel Yergler is and was at all relevant times a resident of Eugene, in Lane County, Oregon. Mr. Yergler is supportive of many progressive causes, including issues related to housing and treatment of unhoused people in the City of Eugene. He has attended protests in public spaces in the City of Eugene and elsewhere. As further discussed *infra*, the City of Eugene has subjected Mr. Yergler to ticketing, exclusion, arrest, and prosecution due, at least in part, to his expressive conduct, and he is at risk of future enforcement action due to his expressive conduct. Mr. Yergler intends to continue speaking out in public spaces against the City's policies.

18.     Defendant City of Eugene is a municipal corporation duly organized and existing under the laws of the State of Oregon. The City's acts which are the subject of this lawsuit were undertaken in the execution of an official policy and/or practices implemented by or consented to by authorized policymakers of the City of Eugene; and were intentionally committed, are ongoing, and will continue to be systematically committed unless restrained by this court.

19.     Police Officer Eric Eason and Police Officer Eric Hubbard are, and were at all relevant times, law enforcement officers employed by the City of Eugene, and are sued in their official capacities.

20.     Craig Carnagey is the City of Eugene Parks and Open Spaces Division Director, and is sued in his official capacity.

21.     The City, through the City Manager, has delegated to Officers Eason and Hubbard final authority to apply Park Rules 1.010(16), 1.010(17), and 1.005(3) to behavior they observe

on City property and at City events, and to decide, in their discretion, how to interpret those Rules; whether and when to tell people to leave the City-owned properties and/or to ticket, arrest, and/or exclude people for those observed behaviors; thereby rendering Eason and Hubbard final policymakers, with respect to such City actions.

22.    The City delegates to its Parks and Open Spaces Division Director, Craig Carnagey, final decision-making authority regarding the administrative appeal process, thereby rendering him a final policymaker, with respect to such City actions.

23.    Each of the actions set forth in this complaint were taken pursuant to a City practice, custom, procedure, and/or policy, and/or pursuant to a decision made by a governmental official with final policymaking authority -- first, the City Council itself, then the City Manager, and on a case-by-case basis, defendants Eason, Hubbard, and Carnagey.

24.    The punishment of plaintiffs and people similarly situated to them, at least in part due to their public criticism of the City, its elected officials, and key employees (as discussed further, *infra*), was designed and carried out by the City as a governmental entity, and by the individual defendants as final policymakers.

25.    As a result of the defendants' actions, plaintiffs' and other citizens' First and Fourteenth Amendment rights, and their rights under the Oregon Constitution, have been harmed, as alleged herein.

## STANDING

26.    When a person is subject to a threat of enforcement action, an actual arrest, prosecution, or other enforcement action is not a prerequisite to bringing a facial challenge to the law. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

27.    A person whose future speech or conduct may be prohibited under a law is

allowed to challenge that law on its face because it also threatens others not before the court —

those who desire to engage in legally protected expression but who may refrain from doing so

rather than risk prosecution or undertake to have the law declared partially invalid. *Bd. of Airport*

*Com'rs of City of Los Angeles v. Jews for Jesus, Inc*., 482 U.S. 569, 574, 107 S. Ct. 2568, 2572

(1987).

28.    As people who have experienced enforcement of these unlawful laws, the

plaintiffs have standing to bring this facial challenge.

### PLAINTIFF NICHOLAS HOLLOWS

29.    On November 15, 2021, Nicholas Hollows was present in Washington-Jefferson

Park in Eugene, Oregon, during daylight hours, when the park was open to the public. Mr.

Hollows observed Eugene police officers conducting "sweeps" of unhoused campers in the park,

requiring them to leave the park and excluding them from the 5000-plus acres of City-managed

property. Mr. Hollows verbally engaged and questioned officers regarding where one particular

unhoused camper would reside or even be allowed to be present, after being removed from

Washington-Jefferson Park and excluded pursuant to Park Rules. Others stood by and filmed the

verbal interaction.

30.    Eugene police officers Eason and Hubbard arrested and booked Mr. Hollows for

allegedly "Interfering with Police" in violation of Eugene Municipal Code 4.907. Mr. Hollows

also received a "Notice of Restriction of Use" from Eugene Police, excluding him from "entering

or using all City of Eugene Parks, open spaces, or facilities" for 30 days, pursuant to Park Rule

1.005(3) and Administrative Order 58-03-24-F.[5] The notice incorrectly informed Mr. Hollows

---

[5] Upon information and belief, Administrative Order 58-03-24-F was cited as the authority of the
City Manager to delegate her authority to others, presumably here the police, but 58-03-24-F has
been repealed and counsel was unable to locate the order in the City's public database.

the exclusion would remain in effect pending appeal pursuant to Park Rule 1.074.

31.    Mr. Hollows timely appealed his exclusion order to the Parks and Open Spaces
Division Director (Craig Carnagey), who held an informal hearing on November 19, 2021. Mr.
Carnagey upheld the exclusion on the same day. Mr. Hollows sought further review at Eugene
Municipal Court; however, the City of Eugene voluntarily dismissed the exclusion order on
January 7, 2022, because "[t]he exclusion hearing was held outside the prior timeline allowable
by the City Code." Subsequently, the City adopted Administrative Order 58-22-22 on June 6,
2022, which removed any timing requirement for a hearing in Eugene Municipal Court.

32.    The City dismissed Mr. Hollows' criminal charge in Eugene Municipal Court on
June 7, 2023.

### PLAINTIFF SAMUEL YERGLER

33.    On June 10, 2022, Mr. Samuel Yergler attended the grand opening of the new
Downtown Riverfront Park in Eugene, Oregon. The event was free and open to the public. Plans
for the free event included speeches, a ribbon-cutting ceremony, food, and music. During
speeches given to a large crowd by City officials, including City Manager Sarah Medary and Mr.
Carnagey, Mr. Yergler verbally expressed his objections to the City's policies and pro-business
development of the Riverfront Park. Mr. Yergler briefly expressed opposition to the park's
opening, the City's management of funds, City leadership, and the City's handling of the
unhoused crisis.

34.    Eugene Councilman Alan Zelenka confronted, chased, and physically assaulted
Mr. Yergler.

35.    Eugene police officers Eason and Hubbard (the same officers who arrested Mr.
Hollows) then arrested and criminally cited Mr. Yergler for alleged "Incompatible Use of

Park/Disruptive" in alleged violation of Park Rule 1.010(16). The police also gave Mr. Yergler a "Notice of Restriction of Use," excluding him from "entering or using all City of Eugene Parks, open spaces, or facilities" for 30 days, pursuant to Park Rule 1.005(3) and Administrative Order 58-03-24-F. The notice incorrectly informed Mr. Yergler the exclusion would remain in effect pending appeal pursuant to Park Rule 1.074.

36.    Mr. Yergler timely appealed his exclusion order to Division Director Carnagey, who held an informal hearing on June 16, 2022. Mr. Carnagey, who was a witness to the incident and a subject of Mr. Yergler's protest, upheld the exclusion on the same day. Mr. Yergler sought further review of his exclusion by appealing to Eugene Municipal Court. On June 27, 2022, Mr. Yergler was criminally charged in Eugene Municipal Court for violating Park Rule 1.010(17), rather than Park Rule 1.010(16), which the Officers had used earlier when they excluded him from all parks and open spaces.

37.    The City of Eugene voluntarily dismissed the criminal charges and exclusion matter against Mr. Yergler on January 13 and January 17, 2023, respectively.

38.    There presently exists an actual controversy within this Court's jurisdiction whether defendants' actions described herein violate the constitutional rights of plaintiffs and others similarly situated.

39.    If defendants are not enjoined from continuing to enforce the unlawful Park Rules as they have done in the past, plaintiffs, and others similarly situated, will continue to have their constitutional rights violated.

40.    Plaintiffs have no adequate remedy at law for defendants' continuing unlawful conduct, and defendants will continue to violate the constitutional rights of plaintiffs and other similarly situated people, unless enjoined by this Court.

## CAUSES OF ACTION

### FIRST CLAIM
*Monell* -- 42 U.S.C. § 1983
**First and/or Fourteenth Amendment to the United States Constitution**
**Park Rules 1.010(16), (17), and 1.005(3) – Vagueness**

41.    Plaintiffs reallege paragraphs 1-40 in this Complaint as if fully set forth here.

42.    The defendants, acting under the color of state law, through official policy, custom, procedure and/or practice, and/or through its final decisionmakers, has adopted and enforced unconstitutionally vague Park Rules, including Park Rule 1.010(16), (17), and 1.005(3), as official policies.

43.    Park Rules 1.010(16), (17) and 1.005(3), on their face, allow unfettered discretion by law enforcement and other City employees and officials, and each of those Rules "fails to give ordinary people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). Each of these Rules fails to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Each of these Rules "run afoul of the Due Process Clause because it fails to give adequate guidance to those who would be law-abiding, to advise defendants of the nature of the offense with which they are charged, or to guide courts in trying those who are accused." *Musser v. Utah*, 333 U.S. 95, 97 (1948).

44.    Park Rule 1.010(16) allows arbitrary and discriminatory enforcement because determining what speech or expressive conduct is "incompatible" with the "appropriate" use of a public space or interferes with others' "reasonable" use and enjoyment is completely dependent on subjective beliefs. Almost any imaginable activity or conduct could be seen as "interfering with" or "incompatible" with another's enjoyment of a public forum, leading to

enforcement/exclusion actions by the City.

45.     Park Rules 1.010(16) and (17) similarly allow arbitrary and discriminatory enforcement, because what type of speech or expressive conduct may be deemed "disruptive" or "not disruptive" in a public space is not readily apparent, and will depend upon who is present, and their personal opinions concerning park usage.

46.     What gives someone enjoyment in use of a public forum necessarily depends on that person's tastes, interests, and opinions; therefore, any imaginable speech or expressive conduct could be deemed to interfere or disrupt another's enjoyment of a public space, leading to City enforcement/exclusion.

47.     Park Rules 1.010(16) and (17) fail to provide notice to an ordinary reader of what conduct is or is not circumscribed.

48.     Park Rule 1.005(3) (the exclusion Rule) also allows arbitrary and discriminatory enforcement, because the Rules completely lack standards to limit the defendants' discretion in issuing an exclusion, including its duration or geographic scope. Under the plain language of the Rule, an exclusion may last for an unlimited period of time, and regardless of the place where the conduct occurred, the nature of the conduct, whether any particular "victim" is identified, or whether the conduct bore any relationship to the 5000-plus acres covered by the exclusion order. Because Park Rule 1.005(3) lacks these standards, the Rule fails to provide an ordinary person prior notice of when, why, and for how long an exclusion order may be issued against them if they are deemed to have violated one of the other Park Rules.

49.     The Rules target speech, and therefore violate the First Amendment due to vagueness.

50.     In addition, and in the alternative, whether or not the Rules are deemed to target

speech directly, they violate the Fourteenth Amendment due to their vagueness.

51.    Plaintiff Yergler has standing to challenge the facial vagueness of Park Rules 1.010(16), (17), and 1.005(3), because he has suffered past enforcement of each Rule and is at risk of future enforcement of these laws.

52.    Plaintiff Hollows has standing to challenge the facial vagueness of Park Rule 1.005(3) because he has suffered past enforcement of this Rule and is at risk for future enforcement of this Rule.

**SECOND CLAIM**
*Monell* -- 42 U.S.C. § 1983
**First Amendment to the United States Constitution – Lack of Narrow Tailoring**
**Park Rules 1.005(3), 1.010(16) and (17)**

53.    Plaintiffs reallege paragraphs 1-40 in this Complaint as if fully set forth here.

54.    Defendant City of Eugene, acting under the color of state law, through its policies, practices, procedures and/or customs, and/or through its agents acting as a final decisionmakers, has adopted and enforced Park Rules 1.005(3), 1.010(16) and (17). Those rules are unconstitutional time, place, and manner restrictions on speech in public fora, because they are not narrowly tailored to serve a significant governmental interest; do not leave open ample alternative channels for communication of the information; and delegate overly broad discretion to government officials.

55.    These Park Rules regulate conduct that occurs in quintennial public fora: all City parks and other City-owned property and facilities.

56.    Park Rule 1.010(16) is not content-neutral. It punishes speech which is subjectively deemed to be "disruptive or incompatible with the appropriate use of the premises or which interferes with the reasonable use and enjoyment" of the public space, requiring the City's enforcers to evaluate the content of any message or expressive conduct to determine whether, in

their view, that content violates the Rule.

57.     Park Rule 1.010(17) is also not content-neutral because it criminalizes any conduct, including speech, which is deemed to be "disruptive" or to "interfere[]" with the enjoyment by others" of a public space. Necessarily, this requires the contents of any message or expressive conduct to be assessed by the enforcer, to determine if someone has allegedly violated the Rule.

58.     In the alternative, even if they are content-neutral, the "narrow tailoring" test applies, applying intermediate scrutiny.

59.     Neither Park Rule 1.005(3) (the discretionary exclusion Rule), Rule 1.010(16), nor Rule 1.010(17) are narrowly tailored to a significant government interest, especially when balancing the interest of freedom of expression in public spaces, the multitude of existing state criminal laws which prohibit conduct that is disruptive, and the total discretion on the part of the people who enforce the Rules, to determine what speech or expressive conduct is "appropriate," "consistent," or "enjoyable" in public spaces, and what penalties to issue.

60.     Because the Park Rules, on their face, apply to 5000-plus acres of parks, the library, and all other City-owned property, there are insufficient available alternative channels for expression.

61.     Plaintiff Yergler has standing to challenge the lack of narrow tailoring of Park Rules 1.005(3), 1.010(16) and (17) because he suffered past enforcement under each Rule and is at risk of future enforcement of these laws.

62.     Plaintiff Hollows has standing to challenge the lack of narrow tailoring of Park Rule 1.005(3) because he has suffered past enforcement under each Rule and is at risk of future enforcement of these laws.

**THIRD CLAIM**
*Monell* -- 42 U.S.C. § 1983
**First Amendment to the United States Constitution – Overbreadth**
**Park Rules 1.010(16), (17), and 1.005(3)**

63.     Plaintiffs reallege paragraphs 1-40 in this Complaint as if fully set forth here.

64.     Defendant City of Eugene, acting under the color of state law, through its policies,

practices, procedures and/or customs, and/or through City agents acting as final decisionmakers,

has adopted and enforced unconstitutionally overbroad Park Rules, including Park Rules

1.010(16), (17), and 1.005(3), as official policies.

65.     The City's adoption and enforcement of Park Rule 1.010(16) prohibits a

substantial amount of protected expression, because it criminalizes any speech or expressive

conduct which a City employee or official, in their discretion, decides is "disruptive" or

incompatible with the "appropriate" use of a public space, or interferes with the "reasonable" use

and enjoyment of a public space, with no objective guidelines or checks and balances.

66.     The City's adoption and enforcement of Park Rule 1.010(17) similarly prohibits a

substantial amount of protected expression, because it criminalizes any activity "which is

disruptive or interferes with the enjoyment by others of City sponsored park, open space, or

recreational programs or activities."

67.     Park Rule 1.005(3) allows almost limitless exclusion of people, at the discretion

of a police officer or even "any other person in lawful charge of the premises," from all 5000-

plus acres of public spaces for any violation of Park Rules or other laws in a public place,

thereby prohibiting a substantial amount of protected expression in virtually every quintessential

public forum in the City of Eugene. Defendants have complete discretion to determine the length

of time an exclusion will last, and regardless of the place where the conduct occurred, the nature

of the conduct, or whether the conduct bore any relationship to the public places covered by the

exclusion.

68.     "A substantial number of [the] applications" of these Rules would be

unconstitutional, even if the Rule is deemed to have a "plainly legitimate sweep." *United States*

*v. Stevens*, 559 U.S. 460, 473, 130 S. Ct. 1577, 1587 (quoting *Washington State Grange v.*

*Washington State Republican Party*, 552 U.S. 442, 449 (2008)). Each of these Rules is

"unconstitutional on its face" because "it prohibits a substantial amount of protected expression."

*Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002).

69.     Plaintiff Yergler has standing to challenge the facial overbreadth of Park Rules

1.010(16), (17), and 1.005(3) because he has suffered past enforcement under each Rule and is at

risk of future enforcement of these laws.

70.     Plaintiff Hollows has standing to challenge the facial overbreadth of Park Rule

1.005(3) because he has suffered past enforcement under each this Rule and is at risk for future

enforcement of this Rule.

## FOURTH CLAIM
### *Monell* -- 42 U.S.C. § 1983
### Fourteenth Amendment to the United States Constitution
### Park Rules 1.005(3) and 1.074 -- Procedural Due Process

71.     Plaintiffs reallege paragraphs 1-40 in this Complaint as if fully set forth here.

72.     Defendant City of Eugene, acting under the color of state law, through its policies,

practices, procedures and/or customs, and/or through City agents acting as final decisionmakers,

has adopted and enforced Park Rules 1.005(3) and 1.074.

73.     These Park Rules provide no objective standards or burden of proof for when an

exclusion should be upheld, modified or reversed by a Park Director or reviewing Municipal

Court. Furthermore, there is no mechanism to seek recusal of the decision maker for being a

witness or having shown bias towards the City, as was the case of Mr. Carnagey issuing a

decision while at the same time being a witness in Mr. Yergler's matter and one of the subjects of Mr. Yergler's statements criticizing the City.

74.     When contesting an exclusion, the excluded person's procedural due process rights are unclear and the decision-maker has total discretion in deciding whether to uphold the exclusion.

75.     In addition, upon information and belief, by incorrectly telling excluded people that the exclusion remains in effect pending appeal, defendants have deprived some people of what little due process is actually available because people are staying away from the excluded areas during the appeal process.

76.     The limited procedural due process provided in the rules is inadequate to actually safeguard a person's rights. A person challenging their exclusion must do so, in writing only, to be delivered to a specific location in Eugene, Oregon, within 48 hours of receiving the exclusion notice. In contrast, the City has seven days to schedule an informal hearing and five days to issue a decision from the informal hearing, and there is no time limit for the Municipal Court to complete review.

77.     As such, Park Rules 1.005(3) and 1.074 deprive people of their liberty interests and their right to free association, speech, free movement, and public participation, without due process of law.

78.     Plaintiff Yergler has standing to challenge the procedural due process violations of Park Rules 1.005(3) and 1.074 because he has suffered past enforcement under each Rule and is at risk of future enforcement of these laws.

79.     Plaintiff Hollows has standing to challenge the procedural due process violations of Park Rules 1.005(3) and 1.074 because he has suffered past enforcement under each Rule and

is at risk for future enforcement of this Rule.

### FIFTH CLAIM
### *Violation of Nondelegation Doctrine and Ultra Vires Actions –*
### *OR CONST Art. I, § 21; Art. III § 1; Art. IV § (1)(1)*
### All Park Rules

80.     Plaintiffs reallege paragraphs 1-40 in this Complaint as if fully set forth herein.

81.     Defendant City of Eugene, through Eugene Code 2.019(1), delegated the following administrative authority to the City Manager or the City Manager's designee:

> (a)Administer oaths; (b) Audit records to assure conformance with this code; (c) Certify official acts; (d) Subpoena and require attendance of witnesses at meetings or hearings to determine compliance with this code; (e) Require production of relevant documents; (f) Swear witnesses; (g) Take testimony of any person by deposition; (h) Adopt rules for implementation of any provisions of this code; and (i) Perform all other acts necessary to administer or enforce the provisions of this code.

82.     The City Manager has further delegated their authority to the City Parks and Open Spaces Department, which has thereby further delegated enforcement authority to other City personnel, and in the case of Park Rule 1.005(1), apparently even to private citizens.

83.     The City has adopted ordinances regulating the City Manager's authority. For example, the City adopted Eugene Code 2.018, guiding how the City Manager is to issue administrative civil penalties, and appeal procedures for a person aggrieved by such actions. See also Eugene Code 2.021.

84.     Upon information and belief, these existing ordinances which limit the delegation of the City Manager's powers are not sufficient to procedurally safeguard people's rights in the context of the Park Rules, and in any case, appear to not have been followed by the City Manager or her designees. To the contrary, the City Manager has fully delegated interpretation and enforcement of the Park Rules to police officers and other people, without any meaningful guidance on how to do so, or limitations on that delegation.

85.     The delegation of legislative authority to the City Manager by the City of Eugene

was not an adequate expression of legislative policy; there are no limitations on who may or may not be a City Manager designee; and there are no meaningful procedural safeguards to guard against arbitrary application of this delegation.

86.    Through Eugene Code 2.1990(1) and 2.019(1)(h), the City has permitted the City Manager, and any designee she desires, to criminalize protected conduct, and issue and uphold unconstitutional exclusions from public space, as discussed *supra*.

87.    The interpretation and enforcement of the Park Rules is occurring *ultra vires*. In *Larson v. Domestic & Foreign Commerce Corporation*, 337 U.S. 682, 689 (1949) the Court explained the doctrine as follows:

> [W]here the officer's powers are limited by statute, actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are *ultra vires* his authority and therefore may be made the object of specific relief.

88.    The City unlawfully delegated authority to the other defendants, and other people, to discretionarily enforce the Park Rules, without any defined standards governing the exercise of that discretion, in violation of Article 1, Section 21; Article III section 1; and Article IV section (1)(1) of the Oregon Constitution.

89.    The Park Rules, by their terms, confer unlimited power upon the defendants and others, to interpret the words in the Rules and decide who to enforce them against, when, and how. The City has declared no policy or standard, nor has it articulated any requirements or limits, or definition of circumstances and conditions under which the Rules are to be interpreted and enforced.

90.    The defendants should be enjoined from the continued use of the unconstitutional Park Rules, which facilitate the unconstitutional and arbitrary deprivation of Plaintiffs' and similarly situated people's protected constitutional rights.

91.     Plaintiffs are entitled to recover their litigation costs and attorney fees incurred herein pursuant to Oregon's substantial benefit doctrine (*Deras v. Myers*, 272 Or 47, 535 P2d 541 (1975)).

92.     Plaintiff Yergler has standing to challenge the delegation of power by the City of Eugene to the City Manager because he has suffered past enforcement under this delegation of and is at risk of future enforcement of these laws.

93.     Plaintiff Hollows has standing to challenge the delegation of power by the City of Eugene to the City Manager because he has suffered past enforcement under this delegation of and is at risk of future enforcement of these laws.

## RELIEF REQUESTED

Plaintiffs respectfully request that this Court:

(a)     Exercise jurisdiction over plaintiffs' claims and grant them a jury trial;

(b)     Issue declaratory and injunctive relief, finding Park Rules 1.010(16), 1.010(17), 1.005(3), and 1.074 unconstitutional and therefore unenforceable;

(c)     Award plaintiffs' reasonable attorney's fees and costs as provided by 42 U.S.C. § 1988 and Oregon's public benefit doctrine (*Deras v. Myers*, 272 Or 47, 535 P2d 541 (1975)); and

(d)     Grant any other appropriate relief.

DATED:  October 20, 2023.

  /s/  Marianne Dugan
Marianne Dugan, OSB # 932563
Email:  mdugan@cldc.org

  /s/  Sarah Alvarez
Sarah Alvarez, OSB # 182999
Email:  salvarez@cldc.org

CIVIL LIBERTIES DEFENSE CENTER

1711 Willamette St. Suite 301 #359
Eugene, OR  97402
Telephone:  541.687.9180