IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| SAMUEL YERGLER and NICHOLAS HOLLOWS,<br><br>          Plaintiffs,<br><br>    v.<br><br>CITY OF EUGENE,<br><br>          Defendant. | Case No. 6:23-cv-01545-MC<br><br>OPINION AND ORDER |

MCSHANE, Judge:

Plaintiffs, one current and one former City of Eugene resident, seek declaratory and injunctive relief in this constitutional facial challenge to five City of Eugene Park Rules. Pls.' Compl., ECF No. 1. Enforced together, Plaintiffs contend these Park Rules threaten free expression in violation of the U.S. Constitution and improperly delegate authority in violation of the Oregon Constitution. Both parties now move for summary judgment. City's Mot., ECF No. 16; Pls.' Mot., ECF No. 23. Because Plaintiffs lack standing to assert their claims, summary judgment is GRANTED in the City's favor.

**LEGAL STANDARD**

On a motion for summary judgment, the moving party bears an initial burden to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine" dispute of material fact. *Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed. R. Civ. P. 56(e)). A dispute is considered "genuine" if the "evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)).

## BACKGROUND

### I. The Park Rules

This action challenges the regulatory framework through which the City of Eugene manages its park property: the Park and Open Space Rules ("Park Rules"). These interrelated Park Rules apply to all City-controlled parks, facilities, and open spaces. They provide the hours of operation, explain what areas are covered, establish a system for permits, and delegate responsibility for administration. The Park Rules also describe what conduct is permitted and regulated throughout the subject areas, as well as what activities are prohibited and vulnerable to the Rules' enforcement mechanisms.

As with most regulatory schemes, the Park Rules have undergone multiple changes over the years. *Compare* Miller Decl. Ex. 1, ECF No. 17 ("2021 Park Rules") *with* Miller Decl. Ex. 10 ("2024 Park Rules"). Plaintiffs filed the instant action challenging the 2021 Park Rules.

#### a. 2021 Park Rules

Under the 2021 Park Rules, the following relevant activities were prohibited:

> (16) Engaging in any activity or conduct which is disruptive or incompatible with the appropriate use of the premises or which interferes with the reasonable use and enjoyment of the park, open space area, or park facility by others, including, but not limited to, using playground equipment, picnic tables or picnic shelters for reasons other than their intended use.

> (17) Engaging in any activity or conduct which is disruptive or interferes with the enjoyment by others of City sponsored park, open space, or recreational programs or activities.

2021 Park Rules 1.010(16), 1.010(17).

The 2021 Park Rules vested enforcement authority in police officers, "authorized City personnel," or any "other person in lawful charge of the premises." 2021 Park Rule 1.005. In the event of a Rule violation, Park Rule 1.005(3) empowered the City to issue a "Notice of Restriction of Use," which excluded the recipient from future use of the parks:

> (a) The City may, in its discretion, notify any person who engages in conduct in a park, open space, recreational facility or at a City sponsored activity that results in the person being asked to leave the park area, open space area, recreational facility, or activity, being issued a Notice of Rule Violation pursuant to subsection (1)(a)3 of this section, being arrested or cited by a police officer for any violation of park and open space rules, the Eugene Code, 1971, or state or federal law, that they are prohibited from future use of City parks, open space, or facilities, or from participation in City sponsored programs or activities, and their entry therein or thereon will constitute trespassing and that further legal action will be taken accordingly.

2021 Rule 1.005(3) (hereinafter, "Notices").

Under Park Rule 1.074, a Notice could be appealed by filing a written request within 48 hours of receipt. 2021 Park Rule 1.074. Once a request was filed, the City automatically stayed the exclusion pending resolution of the appeals process. *See* Admin. Order No. 58-20-29 (issued Sept. 3, 2020) (Miller Decl. Ex. 4). The first appeal occurred before the Parks and Open Space Division Director, who would hear testimony and issue a decision affirming or dismissing the exclusion, and that decision could be appealed a second time to the Municipal Court.

## II.    The Plaintiffs

Both Plaintiffs have been subjected to enforcement under the 2021 Park Rules.

### a. Nicholas Hollows

On November 15, 2021, Mr. Hollows was volunteering in Washington Jefferson Park in Eugene, Oregon. Hollows Decl. ¶¶ 3–4, ECF No. 25. He noticed officers arresting a homeless individual, approached, and began questioning the officers. *Id.*; Miller Decl. Ex. 16, at 6. When Mr. Hollows refused to remove himself, the officers arrested him for interfering with police in violation of City Code 4.907. Hollows Decl. ¶ 4. The officers issued Mr. Hollows a corresponding Notice, excluding him from parks for one month. *Id.*; Miller Decl. Ex. 15, at 13.

Mr. Hollows appealed the Notice the following day, thereby staying his exclusion order.[1] Miller Decl. Ex. 15, at 14. Division Director Craig Carnagey held a hearing on November 19 and affirmed the exclusion. Hollows Decl. ¶ 5. Mr. Hollows appealed to the Municipal Court, but the City voluntarily dismissed the Notice because the appeal hearing was untimely. *Id.* The trial on Mr. Hollows' interference charge was held in June 2022, but the jury could not reach a verdict. Miller Decl. Ex. 15, at 8. Mr. Hollows entered an *Alford* plea and, after he complied with a term of deferred prosecution, the City dismissed his case. *Id.* at 17; Hollows Decl. ¶ 5.

Sometime later that summer, Mr. Hollows moved to New York, where he continues to reside. Miller Decl. Ex. 15, at 2. This incident is the only time Mr. Hollows was ever issued a Notice; he has never been cited or arrested for violation of a Park Rule. *Id.* at 4, 11, 12.

### b. Samuel Yergler

On June 10, 2022, Mr. Yergler attended the grand opening of the Downtown Riverfront Park in Eugene, Oregon. Yergler Decl. ¶ 4, ECF No. 26. During City Manager Sarah Medary's

---

[1] For both Mr. Hollows and Mr. Yergler, the Notices that were issued incorrectly stated that the exclusion "shall remain in effect pending any requested hearing." Miller Decl. Ex. 15, at 13; Miller Decl. Ex. 17, at 10. However, at their respective depositions, each Plaintiff expressed his awareness that an order in place at the time automatically stayed the enforcement of Notices once a hearing was requested. *See* Miller Decl. Ex. 15, at 6; Miller Decl. Ex. 17, at 4. The Notices currently being used by the City inform the recipient of the automatic stay, *see* Miller Decl. Ex. 13, and the Administrative Order has since been codified in 2024 Park Rule 1.074, *see* Miller Decl. Ex. 10, at 30.

4 – Opinion and Order

speech, Mr. Yergler began shouting his disapproval of the City's course of development for the park. *Id.* at ¶ 6. He shouted: "Shame on Sarah Medary. Shame on you. Stop the sweeps. These people are lying to you." *Id.* Eugene Police removed Mr. Yergler and arrested him. *Id.* at ¶ 7. He received a $200 fine, a citation for violation of 2021 Park Rule 1.010(16), and a Notice excluding him from parks for one month. *Id.* at ¶ 8; Miller Decl. Ex. 17, at 10.

Mr. Yergler appealed the Notice three days later, thereby staying his exclusion. Miller Decl. Ex. 17, at 11. Division Director Craig Carnagey held a hearing on June 16 and affirmed the exclusion. Yergler Decl. ¶ 10. On June 27, the City criminally charged Mr. Yergler for the same incident, this time citing 2021 Rule 1.010(17). *Id.* at ¶ 11. Mr. Yergler appealed a second time to the Municipal Court, but the City dismissed the criminal charge and Notice the following January. *Id.* at ¶ 12; Miller Decl. Ex. 17, at 4.

Mr. Yergler continues to reside in Eugene. He claims to have "attended many protests in public spaces in the City of Eugene and elsewhere, and have spoken out in those public spaces." Yergler Decl. ¶ 2. Yet, this was the only time Mr. Yergler was issued a Notice, cited for violation of a Park Rule, or threatened with enforcement of either. Miller Decl. Ex. 17, at 2, 8, 9.

### III.   The Claims

Based on the forgoing events, Plaintiffs filed this facial challenge on October 20, 2023, seeking declaratory and injunctive relief from 2021 Park Rules 1.010(16), 1.010(17), 1.005(3), and 1.074. Compl. ¶¶ 1, 14. Plaintiffs contend these four Rules are "unconstitutionally vague; circumscribe far more expression in public spaces than necessary; chills expression in public fora; allows unconstitutionally overbroad discretion regarding enforcement by police and other enforcers; is an unconstitutional time, place, and manner restriction; and lacks procedural

safeguards for issuance and review of orders to leave, punishment decisions, and exclusion orders." *Id.* at ¶ 13.[2]

Plaintiffs assert five claims against the City:[3] (1) a First and Fourteenth Amendment challenge against 2021 Park Rules 1.010(16), 1.010(17), and 1.005(3) for vagueness; (2) a First Amendment challenge against 2021 Park Rules 1.010(16), 1.010 (17), and 1.005(3) for lack of narrow tailoring; (3) a First Amendment challenge against 2021 Park Rules 1.010(16), 1.010 (17), and 1.005(3) for overbreadth; (4) a Fourteenth Amendment challenge against 2021 Park Rules 1.005(3) and 1.074 for inadequate procedural due process; and (5) violation of the nondelegation doctrine and ultra vires actions against all 2021 Park Rules under the Oregon Constitution.

### IV. The Amendments

Since the commencement of this action, the City has amended the challenged Park Rules.

Park Rules 1.010(16) and 1.010(17) now prohibit significantly different conduct, as reflected by the following redline:

> (16) ~~Engaging in any activity or conduct which is disruptive or incompatible with the appropriate use of the premises or which interferes with the reasonable use and enjoyment of the park, open space area, or park facility by others, including, but not limited to, using playground equipment, picnic tables or picnic shelters for reasons other than their intended use.~~ Using playground equipment, sports courts, picnic tables or picnic shelters for reasons other than their intended use.
>
> (17) Engaging in any activity or conduct which ~~is disruptive or interferes with the enjoyment by others of City sponsored park,~~

---

[2] Plaintiffs also raise claims under provisions of the Oregon Constitution, alleging that "the City exceeded its lawful authority when it granted unfettered power to the City Manager, without appropriate safeguards or guidance, and the City Manager in turn improperly delegated unfettered enforcement power to the City police officers, City employees, and private actors" in violation of the nondelegation doctrine. Compl. ¶ 15. Because the Court grants summary judgment on the federal claims, it declines to address the state claims, as explained below.

[3] Plaintiffs previously dismissed the other named Defendants: Division Director Craig Carnagey and Eugene Police Officers Eric Eason and Eric Hubbard. Pls.' Not. Vol. Dis., ECF No. 7.

> ~~open space, or recreational programs or activities.~~ disturbs a City event or an event for which the City has issued a Use Permit pursuant to Section 1.004 of these Rules.

2024 Park Rules 1.010(16), 1.010(17).

The City amended Park Rule 1.005 by stripping City personnel of their enforcement authority, which is now limited to only police officers, and by replacing the provision covering the issuance of Notices with the following revised language and supplemented guidelines:

> (a) A police officer may, in their discretion, also issue a Notice of Restriction of Use to any person being arrested or cited for any violation of Park and Open Space Rules or for conduct that occurred in a park, open space, or facility therein that violates the Eugene Code or state of federal law. A Notice of Restriction of Use prohibits its recipient from future use of one or more City parks, open spaces, or facilities thereon, or from participation in City sponsored programs or activities thereon for a specific person of time. Violation of a Notice of Restriction of Use will constitute trespassing and further legal action will be taken accordingly.
>
> 1. Generally, the length of time that future use is restricted shall be based on the person's prior history, if any, of receiving Notice(s) of Restriction of Use. The following guidelines apply unless the police officer determines that the conduct giving rise to the Notice of Restriction of Use warrants a different restriction period: 14 days for a First Notice, 1 month for a second Notice, 3 months for a third Notice, or 6 months for four or more Notices, within a 12-month period.
>
> 2. Generally, the scope of a restriction of use is limited to the specific park, open space, or facility where the conduct giving rise to the Notice of Restriction of Use has occurred. A Notice of Restriction of Use may, however, state that it applies to all City parks, open spaces, and facilities when the police officer determines that the prior history of the person being restricted or the conduct giving rise to the Notice of Restriction of Use warrants a broader restriction.

2024 Park Rule 1.005(2).

2024 Park Rule 1.074, the hearing and appeal procedure, remains largely unchanged, with some additional language codifying the stay of Notices once a hearing is requested.

## ISSUE

Both parties now move for summary judgment on all claims brought by Plaintiffs. The City argues that (1) Plaintiffs lack standing, (2) the subsequent amendments moot Plaintiffs' claims, and (3) both the current and former versions of the Park Rules comply with the U.S. and Oregon Constitutions. Plaintiffs disagree on all points.

Because the Court agrees that Plaintiffs have failed to establish standing as to their claims, this Court is without jurisdiction to decide the merits of the present action and accordingly does not address the remaining arguments. The City is entitled to judgment as a matter of law, as provided below.

## DISCUSSION

### I. Standing[4]

Under Article III of the U.S. Constitution, the "judicial [p]ower" of federal courts is restricted to "[c]ases" and "[c]ontroversies." U.S. Const. Art. III, §§ 1–2. One component of this constitutional limitation is that federal courts may not "decide the merits of [a] dispute" unless the plaintiff demonstrates that he or she has "standing" as to each claim and each form of relief sought. *Warth v. Seldin*, 422 U.S. 490, 498 (1975); *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983); *see also Mayfield v. U.S.*, 599 F.3d 964, 969 (9th Cir. 2010) ("a plaintiff who has standing to seek damages for a past injury, or injunctive relief for an ongoing injury, does not necessarily have standing to seek prospective relief such as a declaratory judgment").

---

[4] "The existence of standing turns on the facts as they existed at the time the plaintiff filed the complaint." *Skaff v. Meridien N. Am. Beverly Hills, LLC*, 506 F.3d 832, 838 (9th Cir. 2007) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 569 at n. 4 (1992)).

To have standing, plaintiffs must show (1) they suffered an "injury-in-fact" (2) which is "fairly traceable" to the actions of the defendant and (3) likely to be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (citations omitted). "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* at 561. "[A]nd, at the summary judgment stage, such a party can no longer rest on . . . mere allegations, but must set forth by affidavit or other evidence specific facts." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 411–12 (2013) (cleaned up).

   a. **<u>Injury in Fact</u>**

An injury-in-fact is one which stems from a "legally protected interest" and is both (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. *Defenders of Wildlife*, 504 U.S. at 560. In a pre-enforcement facial challenge, a plaintiff "satisfies the injury-in-fact requirement [by alleging] 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and there exists a credible threat of prosecution thereunder.'" *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 159 (2014) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)); *see also Matsumoto v. Labrador*, 122 F.4th 787, 797 (9th Cir. 2024). "[N]either the mere existence of a proscriptive statute nor a generalized threat of prosecution satisfies the 'case or controversy' requirement." *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1139 (9th Cir. 2000). "Rather, there must be 'a *genuine* threat of *imminent* prosecution.'" *Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1210 (9th Cir. 2022) (emphasis in the original). Actual arrest, prosecution, or other enforcement action is not a prerequisite, but fears of

prosecution that are "imaginary or speculative" are insufficient. *Babbitt*, 442 U.S. at 298; *see also Driehaus*, 573 U.S. at 158–59.[5]

Here, in satisfaction of their pre-enforcement burden, Plaintiffs offer the following statements from their declarations. *See* Pls.' Resp. 10, ECF No. 22. Mr. Hollows stated:

> I no longer reside in the City of Eugene, but I still frequently visit, and I intend to continue visiting and speaking in public about homelessness and other matters of public concern; and as such I am at risk of future enforcement action due to my expressive conduct. I have been an advocate for the unhoused in the City of Eugene and when living in Eugene I frequently volunteered my time to help various aid organizations in the City of Eugene. I have attended protests in public spaces in the City of Eugene and elsewhere. I have observed many "sweeps" removing unhoused campers from public parks.

Hollows Decl. ¶¶ 1–2. Mr. Yergler stated:

> I am supportive of many progressive causes, including issues related to housing and treatment of unhoused people in the City of Eugene. I have attended many protests in public spaces in the City of Eugene and elsewhere, and have spoken out in those public spaces. I am at risk of future enforcement action due to my expressive conduct. I intend to continue speaking out in public spaces against the City's policies.

---

[5] Despite the undisputed fact that the 2021 Park Rules have been enforced against Mr. Yergler and Mr. Hollows, Plaintiffs repeatedly clarify that this is a *pre*-enforcement facial challenge. Their assertions appear to be rooted in a mistaken belief that labeling this as a pre-enforcement facial challenge somehow eliminates or greatly reduces their burden to demonstrate Article III standing. *See* Pls.' Rep. 1, ECF No. 31 ("Because the latter type of challenge is brought to vindicate the interest of others, the standing requirements are not identical in these two types of cases."); *id.* at 2 ("Even if plaintiffs are required to demonstrate ongoing standing"); *id.* at 3 ("Defendant improperly inserts alleged requirements of 'actual or imminent' enforcement; 'concrete plans' to violate the law; and 'likely as opposed to speculative' enforcement."). The Court is unaware of any precedent, and Plaintiffs have not cited to any, that eliminates the requirement of Article III standing for plaintiffs mounting a pre-enforcement facial challenge. The case law on point indicates otherwise. *See Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010) ("Despite this 'relaxed standing analysis' for pre-enforcement challenges, . . . plaintiffs must still show an actual or imminent injury to a legally protected interest. . . . Even when plaintiffs bring an overbreadth challenge to a speech restriction, i.e., when plaintiffs challenge the constitutionality of a restriction on the ground that it may unconstitutionally chill the First Amendment rights of parties not before the court, they must still satisfy 'the rigid constitutional requirement that plaintiffs must demonstrate an injury in fact to invoke a federal court's jurisdiction.'"); *see also Unified Data Servs., LLC v. Fed. Trade Comm'n*, 39 F.4th 1200, 1210 (9th Cir. 2022) ("Where, as here, Plaintiffs seek judicial intervention before the government has enforced the challenged policy against them, they bear the burden of showing 'a credible threat of enforcement.'").

Yergler Decl. ¶¶ 2–3.

### b. Mr. Hollows' Standing

Based on what Mr. Hollows has provided for the record, the Court cannot conclude that he faces a "credible threat of prosecution" under the Park Rules. More than a year before filing this action, Mr. Hollows moved to New York, where he currently and permanently resides. When asked at his deposition if he had "any plans to return to Eugene," Mr. Hollows responded: "I'm sure I'll visit. I have friends there. I'd like to visit, you know, when it's nice out. I don't have any specific plans right now though, no." Miller Decl. Ex. 15, at 3. "Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Defenders of Wildlife*, 504 U.S. at 564. Moreover, even when he was a Eugene resident, Mr. Hollows recalls one single incident wherein he received a Notice, and that Notice did not precipitate from a Park Rule violation—it resulted from a City Code violation that is a crime regardless of presence in a park. Absent any concrete plans to return to Eugene and encounter the Park Rules, Mr. Hollows' fear of future enforcement is problematically imaginary.[6]

### c. Mr. Yergler's Standing

Mr. Yergler rests his claim to standing on nearly identical statements. Granted, because Mr. Yergler continues to reside in Eugene, his intention to "continue speaking out in public spaces against the City's policies" presents a more credible threat of enforcement than Mr. Hollows. However, those intentions still fail to articulate "a 'concrete plan' to violate the law in

---

[6] In their Reply brief, Plaintiffs claim that "defendant mischaracterize [sic] the nature of Mr. Hollows' claims" in that "he asserts standing only to challenge the exclusion rule (Park Rule 1.005(3))." Pls.' Rep. 5. However, the Complaint reflects that Mr. Hollows asserts standing to challenge Park Rule 1.005(3), *see* Compl. ¶¶ 52, 62, 70, 79, and Park Rule 1.074, *id*. at ¶ 79, and "All Park Rules" based on the delegation of powers, *id*. at ¶ 93. As explained, whatever the precise rule, Plaintiff Hollows' permanent departure from Oregon deprives him of standing to challenge any of Eugene's Park Rules, in their current or past form.

question." *See Arizona v. Yellen*, 34 F.4th 841, 850 (9th Cir. 2022) (explaining that this Circuit's framework to evaluate whether a claimed threat of enforcement is genuine enough to confer standing considers concreteness); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330, 340 (2016) (the Supreme Court emphasizing that an injury in fact must be both concrete and particularized). Here, the record demonstrates that Mr. Yergler supports "progressive causes," has participated in "many protests in public spaces," and "intend[s] to continue speaking out in public spaces against the City's policies." Beyond that, Mr. Yergler fails to offer any specific plans as to what he intends to do, where on City-controlled property he plans to do it, when it will occur, or how his ill-defined future conduct will subject him to enforcement under the 2021 Park Rules. *See Thomas*, 220 F.3d at 1139 ("A general intent to violate a statute at some unknown date in the future does not rise to the level of an articulated, concrete plan."). The suppositional nature of Mr. Yergler's intended conduct is further amplified by the fact that many of the Park Rules Mr. Yergler seeks to challenge have been amended to proscribe materially different conduct. In essence, Mr. Yergler asks this Court to conclude that, because he believes in progressive causes and plans to someday, somewhere speak out against City policy, he faces a genuine threat of having rescinded Park Rules imminently enforced against him. Such a conclusion would be wholly conjectural.

      Mr. Yergler fails in another aspect as well: he has not explained how his intended conduct is "arguably . . . proscribed by" the 2021 Park Rules. If Mr. Yergler's plan is to simply continue speaking out in public spaces against the City's policies, the Park Rules protect such conduct from punishment. *See* 2021 Park Rule 1.005(3)(e) ("Nothing in this Section shall be construed to authorize the exclusion of any person lawfully exercising free speech rights or other rights protected by the state or federal constitution.") (continued in 2024 Park Rule 1.005(2)(e)).

While Mr. Yergler's ability to challenge the constitutionality of the 2021 Park Rules is not contingent upon him confessing that he will violate that law, *see Driehaus*, 573 U.S. at 163, he must still sufficiently establish that his intended conduct is "arguably" proscribed. Here, when what he is intending is explicitly protected, Mr. Yergler's vague allegations provide no further support for his claim to standing.

Courts determining whether a credible threat of enforcement has been shown also consider (1) "whether pre-enforcement plaintiffs have failed to show a reasonable likelihood that the government will enforce the challenged law against them" and (2) "whether the challenged law is inapplicable to the plaintiffs, either by its terms or as interpreted by the government." *Lopez v. Candaele*, 630 F.3d 775, 786 (9th Cir. 2010). Mr. Yergler has been arrested for violation of the Park Rules one time. He appealed, stayed his exclusion, and eventually, it was dropped. On this isolated incident, the prospect of future enforcement is more speculative than imminent. Other than the two incidents described above, Plaintiffs offer no history of past enforcement against parties similarly situated to Plaintiffs or examples of threats or warnings by the City to initiate proceedings under the 2021 Park Rules.

It is Plaintiffs' burden to establish an injury in fact sufficient to satisfy Article III standing. They have not done so. The Court also notes that although both parties focus their arguments on the injury-in-fact element, Plaintiffs have not attempted to establish the other two elements, causation and redressability, at all. Where the requested relief targets laws no longer in effect, the question of redressability is not necessarily a given.

Because Plaintiffs have failed to carry their burden of proving an injury in fact, they lack the standing necessary to challenge the 2021 Park Rules. The City is therefore entitled to judgment as a matter of law on each federal claim brought by Plaintiffs. Finding that those

claims fail, the Court declines to exercise jurisdiction over Plaintiffs' state claims brought under provisions of the Oregon Constitution.

## II.     Leave to Amend

As a final matter, Plaintiffs' Motion briefly requests leave to amend to address the new version of the Park Rules. *See* Pls.' Resp. 1–2. To the extent Plaintiffs expect the Court to view this request as an actual motion, the Court notes that Plaintiffs offer no information as to the appropriateness of granting leave, whether granting leave at this late hour will prejudice the City, how amendment is not futile, or any other arguments in support of an opportunity to amend. Because they offer nothing upon which the Court could properly evaluate their request, leave to amend is denied.

## CONCLUSION

For the reasons stated above, the City is entitled to judgment as a matter of law. Summary judgment is therefore granted in the City's favor. The City's Motion, ECF No. 16, is GRANTED, and Plaintiffs' Motion, ECF No. 23, is DENIED.

IT IS SO ORDERED.

DATED this 24th day of January, 2025.

    s/Michael J. McShane
Michael J. McShane
United States District Judge