Marianne Dugan, OSB # 932563
CIVIL LIBERTIES DEFENSE CENTER
mdugan@cldc.org
1711 Willamette St. Suite 301 #359
Eugene, OR 97401
541-687-9180

UNITED STATES DISTRICT COURT
DISTRICT OF OREGON

| | |
|---|---|
| SAMUEL YERGLER and NICHOLAS HOLLOWS,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF EUGENE,<br><br>Defendant. | Case No. 6:23-cv-1545-MC<br><br>FIRST AMENDED COMPLAINT FOR INJUNCTIVE AND DECLARATORY RELIEF<br><br>First and Fourteenth Amendments to the United States Constitution, 42 U.S.C. § 1983 – *Monell*; and violation of the Oregon Constitution<br><br>Declaratory and Injunctive Relief (Facial Challenge)<br><br>DEMAND FOR JURY TRIAL |

## INTRODUCTION

1. This complaint seeks declaratory and injunctive relief, pursuant to 28 U.S.C. 2201(a), in a facial challenge to various "Park Rules" that are in effect throughout the City of Eugene. The facial challenges are brought pursuant to 42 U.S.C. 1983, for violations of the First and Fourteenth Amendments to the U.S. Constitution; and pursuant to the Oregon Constitution, for violation of the nondelegation doctrine and as *ultra vires* acts.

## JURISDICTION AND VENUE

2. Jurisdiction exists pursuant to 28 U.S.C. §§ 1331 (federal question) and 1343 (civil rights), because plaintiffs' claims arise under 42 U.S.C. § 1983. Venue is proper in the District of Oregon pursuant to 28 U.S.C. § 1391(b), because the City of Eugene is in this district and the events giving rise to plaintiffs' claims occurred therein. The Court has the power to grant the declaratory

relief sought by plaintiffs under 28 U.S.C. § 2201(a), and has equitable power to issue an injunction.

## FACTUAL BACKGROUND

3. The City of Eugene owns and controls over 5000 acres of open space.[1] The City delegated to the City Manager the enactment and enforcement of administrative Park Rules covering those areas. On information and belief, the Park Rules were adopted pursuant to Section 2.019(1)(h) of the Eugene Code, 1971, which authorizes the City Manager or designee to adopt rules for implementation of any provision of the City Code.[2]

4. On information and belief, through numerous administrative orders, the City Manager then further delegated, designating employees within the Public Works Department to promulgate and enforce the Park Rules.

5. The Park Rules provide for enforcement of the rules by Eugene police. Park Rule 1.005.

6. The Park Rules provide for jail time and fines for any violation of any of the rules. Specifically, Park Rule 1.076 provides that "[v]iolation of these Park and Open Space Rules adopted under Section 2.019 of the Eugene Code, 1971, is punishable by a fine not to exceed $500 or confinement in jail not to exceed 30 days, or both such fine and imprisonment." As discussed *infra*, the Park Rules purport to criminalize a multitude of activities and conduct that would otherwise be lawful, or at the most, a civil infraction warranting a small fine.

7. Park Rule 1.005(2)(a) also allows the City to exclude people from all Eugene parks, for a violation of any Park Rule:

> A police officer may, **in their discretion**, also issue a Notice of Restriction of Use to

---

[1] https://www.eugene-or.gov/DocumentCenter/View/68225/COE-Parks-and-Open-Space-Annual-Report-FY2022, page 32 (last visited September 14, 2026).

[2] Available at https://eugene.municipal.codes/EC (last visited September 14, 2026). The reference to "1971" in the Park Rules' citation to the Eugene Code is unclear, as the web version of Code 2.019 states an initial adoption date of 1991.

> any person being arrested or cited for any violation of Park and Open Space Rules or for conduct that occurred in a park, open space, or facility therein that violates the Eugene Code or state or federal law. A Notice of Restriction of Use prohibits its recipient from future use of one or more City parks, open spaces, or facilities thereon, or from participation in City sponsored programs or activities thereon for a specific period of time. Violation of a Notice of Restriction of Use will constitute trespassing and further legal action will be taken accordingly.
>
> 1. **Generally**, the length of time that future use is restricted shall be based on the person's prior history, if any, of receiving Notice(s) of Restriction of Use. The following guidelines apply **unless the police officer determines that the conduct giving rise to the Notice of Restriction of Use warrants a different restriction period**: 14 days for a first Notice, 1 month for a second Notice, 3 months for a third Notice, or 6 months for four or more Notices, within a 12-month period.
>
> 2. **Generally**, the scope of a restriction of use is limited to the specific park, open space, or facility where the conduct giving rise to the Notice of Restriction of Use has occurred. **A Notice of Restriction of Use may, however, state that it applies to all City parks, open spaces, and facilities when the police officer determines that the prior history of the person being restricted or the conduct giving rise to the Notice of Restriction of Use warrants a broader restriction**.

(Emph. added). No boundaries or criteria are included in the rules to limit the police officer's discretion in such exclusionary orders.

8. Park Rule 1.010(17) prohibits "[e]ngaging in any activity or conduct which disturbs a City event or an event for which the City has issued a Special Event Permit." There are no definitions within the rules of "disturbs." Violation of this Rule is punishable by jail time, fine, and/or exclusion.

9. A person may appeal their exclusion order only via a hearing request, submitted in writing to the Parks & Open Space Division Director, within 48 hours of receipt of the exclusion order. Park Rule 1.074. The Director's decision on such an appeal can be further appealed to Eugene Municipal Court. The Court may affirm, modify, or reverse a Division Director's decision, but the Park Rules do not provide any guidance on what the Director or Municipal Court may or should consider when affirming, modifying, or reversing a Park exclusion.

10. In combination, the above-described Park Rules are unconstitutionally vague;

circumscribe more expression in public spaces than necessary; chill expression in public fora; allow unconstitutionally overbroad discretion regarding enforcement by police and other enforcers; are an unconstitutional time, place, and manner restriction, and lack procedural safeguards for issuance and review of orders to leave, punishment decisions, and exclusion orders. Enforced together, these Park Rules have been, and continue to be, serious threats to free expression in all of Eugene public spaces.

11. Park Rules 1.005(2), 1.010(17), and 1.074 are unconstitutional on their face, and plaintiffs have standing to present a facial challenge to those rules, as discussed *infra*.

12. Plaintiffs also allege the City exceeded its lawful authority when it granted unfettered power to the City Manager, without appropriate safeguards or guidance, and the City Manager in turn improperly delegated unfettered enforcement power to City police officers. The Park Rules are currently operating and enforced *ultra vires* and in violation of the nondelegation doctrine.

**PARTIES**

13. Plaintiff Nicholas Hollows was at all relevant times a resident of Eugene, in Lane County, Oregon. Mr. Hollows no longer resides in the City of Eugene, but he still frequently visits, and intends to continue visiting and speaking in public about homelessness and other matters of public concern; and as such is at risk of future enforcement action due to his expressive conduct. Mr. Hollows has been an advocate for the unhoused in the City of Eugene and when living here he frequently volunteered his time to help various aid organizations in the City of Eugene. He has attended protests in the City Parks in the City of Eugene. He has observed many “sweeps” removing unhoused campers from public parks. As further discussed *infra*, the City of Eugene has subjected Mr. Hollows to ticketing, exclusion, arrest, and prosecution due, at least in part, to his expressive conduct in the City Parks, in advocacy for the unhoused, and he intends to continue to speak out in the Eugene city parks in advocacy for the unhoused.

14. Plaintiff Nickolas Hollows moved to Eugene in 2015, and started volunteering with Food Not Bombs in 2018-2020. During the wildfires in 2020, he helped the unhoused with smoke inhalation and camping needs. He helped with supply drive to get unhoused folks tents and supplies. He began informally working alongside other activists trying to help the unhoused, transporting supplies and distributing them to the unhoused.

15. When EPD and the Parks Department started sweeps of the unhoused camps in 2020, a small group of people called "Stop the Sweeps" started showing up to help the unhoused during the sweeps. Plaintiff Hollows worked with them to try to have people present to witness the sweeps and track the City's behavior with relation to the unhoused. He helped organize with unhoused people to work on legal defenses; and coordinated with the City to get back the property of unhoused people after the sweeps. It was hard to get property back -- it was either thrown away or destroyed.

16. During the 2022 World Track Event there was a major push by the City to sweep the unhoused. When the City and EPD fenced off Washington-Jefferson Park Plaintiff Hollows worked with Stop the Sweeps to speak out in support of the unhoused.

17. Although he currently lives on the east coast, Plaintiff Hollows is planning to move to Tacoma in the next few months. He still has friends in Eugene, and visits Eugene every couple of months. If, on one of those trips, he learns of a protest in a Eugene City Park in support of the use of the Eugene parks by the unhoused, he will attend and speak out. If there is an opportunity to show solidarity with any groups helping the unhoused, he will show up in the Eugene parks and again speak out against the City's treatment of the unhoused. If he is driving through Eugene, and learned of a sweep going on in the City parks, he will stop and assist the people getting swept. If, on one of his Eugene trips, he learns of a City event or an event for which the City has issued a Special Event Permit in a Eugene park that is relevant to unhoused issues, he will show up and again speak

out and protest.

18. Plaintiff Hollows' focus on the plight of the unhoused in Eugene is due in part to his understanding that Eugene has the highest per capita rate of homeless in the nation, and in the past and going forward, he wants to positively impact this place.

19. Plaintiff Samuel Yergler is and was at all relevant times a resident of Eugene, in Lane County, Oregon. Mr. Yergler is supportive of many progressive causes, including issues related to housing and treatment of unhoused people in the City of Eugene. He has attended protests in public parks in the City of Eugene. As further discussed *infra*, the City of Eugene has subjected Mr. Yergler to ticketing, exclusion, arrest, and prosecution due, at least in part, to his expressive conduct, in the City Parks, and he is at risk of future enforcement action due to his expressive conduct in Eugene parks. Mr. Yergler intends to continue speaking out in the City Parks against the City's policies.

20. Plaintiff Yergler got started with activism in support of the unhoused in Los Angeles, working at a soup kitchen and living at the Catholic Worker House, from 2008 to 2011. He and his partner moved to Eugene in 2017. In 2018, he joined Eugene's Neighborhood Anarchist Collective, and helped with the free pantry. In the past, when he saw the police doing a "sweep" of the unhoused camps in the Eugene public parks, he would get involved and speak out, and also would center what the people being swept would need – finding out if they needed help moving, or had other needs. He intends to continue that advocacy and involvement in the Eugene city parks in the future.

21. If there is a City event or an event for which the City has issued a Special Event Permit in the future, in a city park, where politicians are speaking, patting themselves on the back (for example, another ribbon-cutting or celebration of City actions), with impacts to the unhoused and the issues they face, Plaintiff Yergler will speak out again in protest in the city parks. He will use that moment to publicly criticize the inaction of public officials and their negligence towards the

local unhoused community.

22. Defendant City of Eugene is a municipal corporation duly organized and existing under the laws of the State of Oregon. The City's acts which are the subject of this lawsuit were undertaken in the execution of an official policy and/or practices implemented by or consented to by authorized policymakers of the City of Eugene; and were intentionally committed, are ongoing, and will continue to be systematically committed unless restrained by this court.

23. The City, through the City Manager, has delegated to Eugene police officers final authority to apply Park Rules 1.005(2) and 1.010(17) to behavior they observe in City parks, and to decide, in their discretion, how to interpret those Rules; whether and when to tell people to leave the City-owned properties and/or to ticket, arrest, and/or exclude people for those observed behaviors; thereby rendering those police officers final policymakers, with respect to such City actions.

24. The City delegates to its Parks and Open Spaces Division Director final decision-making authority regarding the administrative appeal process, thereby rendering him a final policymaker, with respect to such City actions.

25. Each of the actions set forth in this complaint were taken pursuant to a City practice, custom, procedure, and/or policy, and/or pursuant to a decision made by a governmental official with final policymaking authority -- first, the City Council itself, then the City Manager, and on a case-by-case basis, police officers and the Parks and Open Spaces Division Director.

26. The punishment of plaintiffs and people similarly situated to them, at least in part due to their public criticism of the City, its elected officials, and key employees (as discussed further, *infra*), was designed and carried out by the City as a governmental entity, and by the individual defendants as final policymakers.

27. As a result of the defendants' actions, plaintiffs' and other citizens' First and Fourteenth Amendment rights, and their rights under the Oregon Constitution, have been harmed,

as alleged herein.

**STANDING**

28. Only one Plaintiff need demonstrate standing.

29. When a person is subject to a threat of enforcement action, an actual arrest, prosecution, or other enforcement action is not a prerequisite to bringing a facial challenge to the law. *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014).

30. A person whose future speech or conduct may be prohibited under a law is allowed to challenge that law on its face because it also threatens others not before the court — those who desire to engage in legally protected expression but who may refrain from doing so rather than risk prosecution or undertake to have the law declared partially invalid. *Bd. of Airport Com'rs of City of Los Angeles v. Jews for Jesus, Inc.*, 482 U.S. 569, 574, 107 S. Ct. 2568, 2572 (1987).

31. As people who have experienced enforcement of these unlawful laws, the plaintiffs have standing to bring this facial challenge.

32. In particular, as alleged *supra* at paragraphs 3-9 and 13-21 and *infra* at paragraphs 33-36, each of the Plaintiffs has plausibly alleged (1) "an intention to engage in a course of conduct arguably affected with a constitutional interest," (2) that conduct is "proscribed by a statute"; (3) "and there exists a credible threat of prosecution thereunder." Each has alleged a "concrete plan" to violate the challenged rule; and that they would continue engaging in the same conduct for which they had previously faced enforcement. *See, e.g., Porter v. Martinez*, 68 F.4th 429, 437 (9th Cir. 2023) (driver cited for honking in support of a protest had standing to challenge the law under which she was cited when she alleged an intention to honk in support of future protests); *Oklevueha v. Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 835-36 (9th Cir. 2012) (plaintiffs did not need to allege "how, where, and in what quantities" they intended to consume marijuana in the future because they alleged they "have used marijuana in violation of the [challenged law] countless times,

and plan to continue to do so" on a daily or semi-monthly basis).

**PLAINTIFF NICHOLAS HOLLOWS**

33. On November 15, 2021, Nicholas Hollows was present in Washington-Jefferson Park in Eugene, Oregon, during daylight hours, when the park was open to the public. Mr. Hollows observed Eugene police officers conducting "sweeps" of unhoused campers in the park, requiring them to leave the park and excluding them from the 5000-plus acres of City-managed property. Mr. Hollows verbally engaged and questioned officers regarding where one particular unhoused camper would reside or even be allowed to be present, after being removed from Washington-Jefferson Park and excluded pursuant to Park Rules. Others stood by and filmed the verbal interaction.

34. Eugene police officers Eason and Hubbard arrested and booked Mr. Hollows for allegedly "Interfering with Police" in violation of Eugene Municipal Code 4.907. Mr. Hollows also received a "Notice of Restriction of Use" from Eugene Police, excluding him from "entering or using all City of Eugene Parks, open spaces, or facilities" for 30 days, pursuant to Park Rule 1.005(2) and Administrative Order 58-03-24-F.[3] The notice incorrectly informed Mr. Hollows the exclusion would remain in effect pending appeal pursuant to Park Rule 1.074.

35. Mr. Hollows timely appealed his exclusion order to the Parks and Open Spaces Division Director (Craig Carnagey), who held an informal hearing on November 19, 2021. Mr. Carnagey upheld the exclusion on the same day. Mr. Hollows sought further review at Eugene Municipal Court; however, the City of Eugene voluntarily dismissed the exclusion order on January 7, 2022, because "[t]he exclusion hearing was held outside the prior timeline allowable by the City Code." Subsequently, the City adopted Administrative Order 58-22-22 on June 6, 2022, which

[3] Upon information and belief, Administrative Order 58-03-24-F was cited as the authority of the City Manager to delegate her authority to others, presumably here the police, but 58-03-24-F has been repealed and counsel was unable to locate the order in the City's public database.

removed any timing requirement for a hearing in Eugene Municipal Court.

36. The City dismissed Mr. Hollows' criminal charge in Eugene Municipal Court on June 7, 2023.

**PLAINTIFF SAMUEL YERGLER**

37. On June 10, 2022, Mr. Samuel Yergler attended the grand opening of the new Downtown Riverfront Park in Eugene, Oregon. The event was free and open to the public. Plans for the free event included speeches, a ribbon-cutting ceremony, food, and music. During speeches given to a large crowd by City officials, including City Manager Sarah Medary and Mr. Carnagey, Mr. Yergler verbally expressed his objections to the City's policies and pro-business development of the Riverfront Park. Mr. Yergler briefly expressed opposition to the park's opening, the City's management of funds, City leadership, and the City's handling of the unhoused crisis.

38. Eugene Councilman Alan Zelenka confronted, chased, and physically assaulted Mr. Yergler.

39. Eugene police officers Eason and Hubbard (the same officers who arrested Mr. Hollows) then arrested and criminally cited Mr. Yergler for alleged "Incompatible Use of Park/Disruptive" in alleged violation of Park Rule 1.010(16) (former rule criminalizing behavior that interferes with others' enjoyment of the park). The police also gave Mr. Yergler a "Notice of Restriction of Use," excluding him from "entering or using all City of Eugene Parks, open spaces, or facilities" for 30 days, pursuant to Park Rule 1.005(2) and Administrative Order 58-03-24-F. The notice incorrectly informed Mr. Yergler the exclusion would remain in effect pending appeal pursuant to Park Rule 1.074.

40. Mr. Yergler timely appealed his exclusion order to Division Director Carnagey, who held an informal hearing on June 16, 2022. Mr. Carnagey, who was a witness to the incident and a subject of Mr. Yergler's protest, upheld the exclusion on the same day. Mr. Yergler sought further

review of his exclusion by appealing to Eugene Municipal Court. On June 27, 2022, Mr. Yergler was criminally charged in Eugene Municipal Court for violating Park Rule 1.010(17), rather than Park Rule 1.010(16), which the Officers had used earlier when they excluded him from all parks and open spaces.

41. The City of Eugene voluntarily dismissed the criminal charges and exclusion matter against Mr. Yergler on January 13 and January 17, 2023, respectively.

42. There presently exists an actual controversy within this Court's jurisdiction whether defendants' actions described herein violate the constitutional rights of plaintiffs and others similarly situated.

43. If defendants are not enjoined from continuing to enforce the unlawful Park Rules as they have done in the past, plaintiffs, and others similarly situated, will continue to have their constitutional rights violated.

44. Plaintiffs have no adequate remedy at law for defendants' continuing unlawful conduct, and defendants will continue to violate the constitutional rights of plaintiffs and other similarly situated people, unless enjoined by this Court.

## CAUSES OF ACTION

### FIRST CLAIM
### *Monell* -- 42 U.S.C. § 1983
### First and/or Fourteenth Amendment to the United States Constitution
### Park Rules 1.005(2) and 1.010(17) – Vagueness

45. Plaintiffs reallege paragraphs 1-44 in this Complaint as if fully set forth here.

46. The defendants, acting under the color of state law, through official policy, custom, procedure and/or practice, and/or through its final decisionmakers, has adopted and enforced unconstitutionally vague Park Rules, including Park Rule 1.010(17) and 1.005(2), as official policies.

47. Park Rules 1.010(17) and 1.005(2), on their face, allow unfettered discretion by law enforcement and other City employees and officials, and each of those Rules "fails to give ordinary

people fair notice of the conduct it punishes, or so standardless that it invites arbitrary enforcement." *Johnson v. United States*, 576 U.S. 591, 595 (2015). Each of these Rules fails to "give the person of ordinary intelligence a reasonable opportunity to know what is prohibited, so that he may act accordingly." *Grayned v. City of Rockford*, 408 U.S. 104, 108 (1972). Each of these Rules "run afoul of the Due Process Clause because it fails to give adequate guidance to those who would be law-abiding, to advise defendants of the nature of the offense with which they are charged, or to guide courts in trying those who are accused." *Musser v. Utah*, 333 U.S. 95, 97 (1948).

48. Park Rule 1.010(17) allows arbitrary and discriminatory enforcement, because what type of speech or expressive conduct may be deemed to "disturb" a public event in a public space is not readily apparent, and will depend upon who is present, and their personal opinions concerning park usage.

49. What "disturbs" use of a public forum necessarily depends on that person's tastes, interests, and opinions; therefore, any imaginable speech or expressive conduct could be deemed to interfere or disrupt another's enjoyment of a public space, leading to City enforcement/exclusion.

50. Park Rule 1.010(17) fails to provide notice to an ordinary reader of what conduct is or is not circumscribed.

51. Park Rule 1.005(2) (the exclusion Rule) also allows arbitrary and discriminatory enforcement, because the Rules completely lack standards to limit the defendants' discretion in issuing an exclusion, including its duration or geographic scope. Under the plain language of the Rule, an exclusion may last for an unlimited period of time, and regardless of the place where the conduct occurred, the nature of the conduct, whether any particular "victim" is identified, or whether the conduct bore any relationship to the 5000-plus acres covered by the exclusion order. Because Park Rule 1.005(2) lacks these standards, the Rule fails to provide an ordinary person prior notice of when, why, and for how long an exclusion order may be issued against them if they are

deemed to have violated one of the other Park Rules.

52. The Rules target speech, and therefore violate the First Amendment due to vagueness.

53. In addition, and in the alternative, whether or not the Rules are deemed to target speech directly, they violate the Fourteenth Amendment due to their vagueness.

54. Plaintiff Yergler has standing to challenge the facial vagueness of Park Rules 1.010(17) and 1.005(2), because he has suffered past enforcement of each Rule and is at risk of future enforcement of these laws.

55. Plaintiff Hollows has standing to challenge the facial vagueness of Park Rule 1.005(2) because he has suffered past enforcement of this Rule and is at risk for future enforcement of this Rule.

**SECOND CLAIM**
***Monell* -- 42 U.S.C. § 1983**
**First Amendment to the United States Constitution – Lack of Narrow Tailoring**
**Park Rules 1.005(2) and 1.010(17)**

56. Plaintiffs reallege paragraphs 1-44 in this Complaint as if fully set forth here.

57. Defendant City of Eugene, acting under the color of state law, through its policies, practices, procedures and/or customs, and/or through its agents acting as a final decisionmakers, has adopted and enforced Park Rules 1.005(2) and 1.010 (17). Those rules are unconstitutional time, place, and manner restrictions on speech in public fora, because they are not narrowly tailored to serve a significant governmental interest; do not leave open ample alternative channels for communication of the information; and delegate overly broad discretion to government officials.

58. These Park Rules regulate conduct that occurs in quintennial public fora: all City parks and other City-owned property and facilities.

59. Park Rule 1.010(17) is not content-neutral because it criminalizes any conduct, including speech, which is deemed to "disturb" use a public space. Necessarily, this requires the

contents of any message or expressive conduct to be assessed by the enforcer, to determine if someone has allegedly violated the Rule.

60. In the alternative, even if they are content-neutral, the "narrow tailoring" test applies, applying intermediate scrutiny.

61. Neither Park Rule 1.005(2) (the discretionary exclusion Rule) nor Rule 1.010(17) are narrowly tailored to a significant government interest, especially when balancing the interest of freedom of expression in public spaces, the multitude of existing state criminal laws which prohibit conduct that is disruptive, and the total discretion on the part of the people who enforce the Rules, to determine what speech or expressive conduct "disturbs" a public space, and what penalties to issue.

62. Because the Park Rules, on their face, apply to thousands of acres of parks and open spaces, where unhoused people tend to camp, there are insufficient available alternative channels for expression.

63. Plaintiff Yergler has standing to challenge the lack of narrow tailoring of Park Rules 1.005(2) and 1.010(17) because he suffered past enforcement and is at risk of future enforcement of these laws.

64. Plaintiff Hollows has standing to challenge the lack of narrow tailoring of Park Rule 1.005(2) because he has suffered past enforcement under each Rule and is at risk of future enforcement of these laws.

**THIRD CLAIM**
***Monell* -- 42 U.S.C. § 1983**
**First Amendment to the United States Constitution – Overbreadth**
**Park Rules 1.010(17) and 1.005(2)**

65. Plaintiffs reallege paragraphs 1-44 of this Complaint as if fully set forth here.

66. Defendant City of Eugene, acting under the color of state law, through its policies, practices, procedures and/or customs, and/or through City agents acting as final decisionmakers,

has adopted and enforced unconstitutionally overbroad Park Rules, including Park Rules 1.010(17) and 1.005(2), as official policies.

67. The City's adoption and enforcement of Park Rule 1.010(17) prohibits a substantial amount of protected expression, because it criminalizes any activity which "disturbs" certain events in the parks.

68. Park Rule 1.005(2) allows almost limitless exclusion of people, at the discretion of a police officer or even "any other person in lawful charge of the premises," from thousands of acres of public spaces, for a discretionary length of time, for any violation of Park Rules or other laws in a public place, thereby prohibiting a substantial amount of protected expression in virtually every quintessential public forum in the City of Eugene. Defendants have complete discretion to determine the length of time an exclusion will last, and regardless of the place where the conduct occurred, the nature of the conduct, or whether the conduct bore any relationship to the public places covered by the exclusion.

69. "A substantial number of [the] applications" of these Rules would be unconstitutional, even if the Rule is deemed to have a "plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 473, 130 S. Ct. 1577, 1587 (quoting *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449 (2008)). Each of these Rules is "unconstitutional on its face" because "it prohibits a substantial amount of protected expression." *Ashcroft v. Free Speech Coalition*, 535 U.S. 234, 244 (2002).

70. Plaintiff Yergler has standing to challenge the facial overbreadth of Park Rules 1.010(17) and 1.005(2) because he has suffered past enforcement under each Rule and is at risk of future enforcement of these laws.

71. Plaintiff Hollows has standing to challenge the facial overbreadth of Park Rule 1.005(2) because he has suffered past enforcement under each this Rule and is at risk for future

enforcement of this Rule.

**FOURTH CLAIM**
***Monell* -- 42 U.S.C. § 1983**
**Fourteenth Amendment to the United States Constitution**
**Park Rules 1.005(2) and 1.074 -- Procedural Due Process**

72. Plaintiffs reallege paragraphs 1-44 of this Complaint as if fully set forth here.

73. Defendant City of Eugene, acting under the color of state law, through its policies, practices, procedures and/or customs, and/or through City agents acting as final decisionmakers, has adopted and enforced Park Rules 1.005(2) and 1.074.

74. These Park Rules provide no objective standards or burden of proof for when an exclusion should be upheld, modified or reversed by a Park Director or reviewing Municipal Court. Furthermore, there is no mechanism to seek recusal of the decision maker for being a witness or having shown bias towards the City, as was the case of Mr. Carnagey issuing a decision while at the same time being a witness in Mr. Yergler's matter and one of the subjects of Mr. Yergler's statements criticizing the City.

75. When contesting an exclusion, the excluded person's procedural due process rights are unclear and the decision-maker has total discretion in deciding whether to uphold the exclusion.

76. In addition, upon information and belief, by incorrectly telling excluded people that the exclusion remains in effect pending appeal, defendants have deprived some people of what little due process is actually available because people are staying away from the excluded areas during the appeal process.

77. The limited procedural due process provided in the rules is inadequate to actually safeguard a person's rights. A person challenging their exclusion must do so, in writing only, to be delivered to a specific location in Eugene, Oregon, within 48 hours of receiving the exclusion notice. In contrast, the City has seven days to schedule an informal hearing and five days to issue a decision from the informal hearing, and there is no time limit for the Municipal Court to complete review.

78. As such, Park Rules 1.005(2) and 1.074 deprive people of their liberty interests and their right to free association, speech, free movement, and public participation, without due process of law.

79. Plaintiff Yergler has standing to challenge the procedural due process violations of Park Rules 1.005(2) and 1.074 because he has suffered past enforcement under each Rule and is at risk of future enforcement of these laws.

80. Plaintiff Hollows has standing to challenge the procedural due process violations of Park Rules 1.005(2) and 1.074 because he has suffered past enforcement under each Rule and is at risk for future enforcement of this Rule.

**FIFTH CLAIM**
***Violation of Nondelegation Doctrine and Ultra Vires Actions –***
**OR Const. Art. I, § 21; Art. III § 1; Art. IV § (1)(1)**
**All Park Rules**

81. Plaintiffs reallege paragraphs 1-44 of this Complaint as if fully set forth herein.

82. Defendant City of Eugene, through Eugene Code 2.019(1), delegated the following administrative authority to the City Manager or the City Manager's designee:

(a)Administer oaths; (b) Audit records to assure conformance with this code; (c) Certify official acts; (d) Subpoena and require attendance of witnesses at meetings or hearings to determine compliance with this code; (e) Require production of relevant documents; (f) Swear witnesses; (g) Take testimony of any person by deposition; (h) Adopt rules for implementation of any provisions of this code; and (i) Perform all other acts necessary to administer or enforce the provisions of this code.

83. The City Manager has further delegated their authority to the City Parks and Open Spaces Department, which has thereby further delegated enforcement authority to other City personnel, and in the case of Park Rule 1.005(1), apparently even to private citizens.

84. The City has adopted ordinances regulating the City Manager's authority. For example, the City adopted Eugene Code 2.018, guiding how the City Manager is to issue administrative civil penalties, and appeal procedures for a person aggrieved by such actions. See also Eugene Code 2.021.

85. Upon information and belief, these existing ordinances which limit the delegation of the City Manager's powers are not sufficient to procedurally safeguard people's rights in the context of the Park Rules, and in any case, appear to not have been followed by the City Manager or her designees. To the contrary, the City Manager has fully delegated interpretation and enforcement of the Park Rules to police officers and other people, without any meaningful guidance on how to do so, or limitations on that delegation.

86. The delegation of legislative authority to the City Manager by the City of Eugene was not an adequate expression of legislative policy; there are no limitations on who may or may not be a City Manager designee; and there are no meaningful procedural safeguards to guard against arbitrary application of this delegation.

87. Through Eugene Code 2.1990(1) and 2.019(1)(h), the City has permitted the City Manager, and any designee she desires, to criminalize protected conduct, and issue and uphold unconstitutional exclusions from public space, as discussed *supra*.

88. The interpretation and enforcement of the Park Rules is occurring *ultra vires*. In *Larson v. Domestic & Foreign Commerce Corporation*, 337 U.S. 682, 689 (1949) the Court explained the doctrine as follows:

> [W]here the officer's powers are limited by statute, actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden. His actions are *ultra vires* his authority and therefore may be made the object of specific relief.

89. The City unlawfully delegated authority to the other defendants, and other people, to

discretionarily enforce the Park Rules, without any defined standards governing the exercise of that discretion, in violation of Article 1, Section 21; Article III section 1; and Article IV section (1)(1) of the Oregon Constitution.

90. The Park Rules, by their terms, confer unlimited power upon the defendants and others, to interpret the words in the Rules and decide who to enforce them against, when, and how. The City has declared no policy or standard, nor has it articulated any requirements or limits, or definition of circumstances and conditions under which the Rules are to be interpreted and enforced.

91. The defendants should be enjoined from the continued use of the unconstitutional Park Rules, which facilitate the unconstitutional and arbitrary deprivation of Plaintiffs' and similarly situated people's protected constitutional rights.

92. Plaintiffs are entitled to recover their litigation costs and attorney fees incurred herein pursuant to Oregon's substantial benefit doctrine (*Deras v. Myers*, 272 Or 47, 535 P2d 541 (1975)).

93. Plaintiff Yergler has standing to challenge the delegation of power by the City of Eugene to the City Manager because he has suffered past enforcement under this delegation of and is at risk of future enforcement of these laws.

94. Plaintiff Hollows has standing to challenge the delegation of power by the City of Eugene to the City Manager because he has suffered past enforcement under this delegation of and is at risk of future enforcement of these laws.

## RELIEF REQUESTED

Plaintiffs respectfully request that this Court:

(a) Exercise jurisdiction over plaintiffs' claims and grant them a jury trial;

(b) Issue declaratory and injunctive relief, finding Park Rules 1.010(17), 1.005(2), and

1.074 unconstitutional and therefore unenforceable;

(c) Award plaintiffs' reasonable attorney's fees and costs as provided by 42 U.S.C. § 1988 and Oregon's public benefit doctrine (*Deras v. Myers*, 272 Or 47, 535 P2d 541 (1975)); and

(d) Grant any other appropriate relief.

DATED: September 14, 2026,

/s/ Marianne Dugan
Marianne Dugan, OSB # 932563
Email: mdugan@cldc.org
CIVIL LIBERTIES DEFENSE CENTER
1711 Willamette St. Suite 301 #359
Eugene, OR 97402
Telephone: 541.687.9180